# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THERESA MARIE SMITH,**

    **Plaintiff,**

**-vs-**                                                   **Case No. 6:15-cv-896-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) partially denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## I.     BACKGROUND

### A.    Procedural History

Plaintiff originally filed on October 27, 2009 for a period of disability, and disability insurance benefits and SSI benefits on November 9, 2009, alleging an onset of disability on July 16, 2009, due to diabetes, degenerative discs in her back, high blood pressure, and arthritis. R. 144-48, 203, 206.

Plaintiff's application for Supplemental Security Income was denied for excessive income on November 16, 2009; she was receiving unemployment at the time she applied. R. 83-90, 142. Plaintiff's Disability Insurance Benefits application was denied initially and on reconsideration. R.91-98. Plaintiff requested a hearing, which was held on May 25, 2011, before Administrative Law Judge Douglas Walker (hereinafter referred to as "ALJ"). R. 33-54. In a decision dated June 15, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 14-32. Plaintiff filed a Request for Review of the ALJ's decision, which the Appeals Council denied on November 5, 2012. R. 1-3.

Plaintiff filed her appeal seeking judicial review on January 9, 2013, and this Court reversed and remanded the decision to the Commissioner on March 4, 2014, for consideration of Plaintiff's peripheral neuropathy and Charcot foot, and her inability to afford her insulin and other medications as the reasons for her noncompliance. R. 909-28. The ALJ held a new hearing on November 19, 2014 (R. 826-62), and on February 5, 2015, the ALJ "reaffirmed his earlier decision of June 15, 2011 and applie[d] the Medical-Vocational Rules" to find Plaintiff disabled as of May 26, 2014, but not before, in a partially favorable decision. R. 801-25. The ALJ noted that Plaintiff's earnings record showed that she had sufficient quarters of coverage to remain insured through June 30, 2014. R. 805. In her second appeal to this Court, filed on June 4, 2015, Plaintiff seeks judicial review of the ALJ's decision to the extent he found her not disabled prior to May 26, 2014. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was 46 years old at the time of the ALJ's initial decision and was 50 years old at the time of the second decision. R. 25, 144, 830. Plaintiff had a high school education and had worked in the past as a bank teller, retail manager, and loan administrator. R. 50-51, 164, 187. Plaintiff had a steady and consistent work record, earning approximately $25,000 to $30,000 annually (indexed for inflation) from 1992 through 2009. R. 149-50.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of diabetes, degenerative discs in her back, high blood pressure, bronchial problems, arthritis, and swelling and numbness in her right foot. R. 144, 177, 206. She testified at the second hearing on November 19, 2014 that her blood sugar readings were out of control. and she suffered from neuropathy, lower extremity swelling, and blurred vision. R. 834-41. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from diabetes, a back disorder, obesity, and chronic obstructive pulmonary disease, hypertension, and peripheral neuropathy, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 807-08.

The ALJ determined that, from July 16, 2009 to May 26, 2014, Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work, but should avoid frequently ascending and descending stairs, frequent pushing and pulling motions with her lower extremities (foot controls) within the aforementioned weight restrictions; activities requiring fine frequent manipulation with fingering with both hands; and hazards in the workplace; and limited to occasional performance of balancing, stooping, crouching, kneeling, crawling, and overhead reaching with the left upper extremity; with no climbing of ropes, ladders, or scaffolds. R. 808. Plaintiff was also restricted to a "relatively clean" work environment (low levels of pollutants and stable temperatures). R. 808. Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work. R. 815. Considering Plaintiff's age, education, vocational profile and RFC, and, based on the testimony of the vocational expert ("VE"), prior to May 26, 2014, the date Plaintiff's age category changed[1], the ALJ concluded that there were jobs existing in significant numbers in the national

---

[1] Based on direct application of Medical-Vocational Rule 201.14, Plaintiff became disabled when she moved from the age category of "younger individual" to the category of "an individual closely approaching advanced age" on May 26, 2014 R. 815-16.

economy that Plaintiff could have performed as an auction clerk, financial aid counselor, state collection clerk, state security clerk, and state mortgage closing clerk. R. 816. The ALJ also found that, beginning on May 26, 2014, the date Plaintiff's age category changed, and considering her age, education, work experience, and residual functional capacity, the ALJ found Plaintiff to be disabled based on a direct application of Medical-Vocational Rule 201.14 and because there were no jobs that exist in significant numbers in the national economy that she could perform. R. 816.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by finding she had the RFC to perform sedentary work contrary to her treating physician's statement. Second, Plaintiff contends the ALJ erred by relying on the VE's testimony based on an inaccurate hypothetical that did not include all of Plaintiff's limitations. Third, Plaintiff argues that the ALJ erred in assessing her credibility because she suffered from pain caused by several impairments. For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC and the treating physician's opinion

Plaintiff argues that the ALJ erred in finding her able to perform sedentary work after failing to adequately weigh and consider all of the medical evidence supporting the claimant's limitations and failing to adequately consider the opinions of the treating physician.  The Commissioner argues that the ALJ's decision was based on substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

In this second appeal, the ALJ found Plaintiff had the RFC to perform sedentary work with certain additional limitations:

> After careful consideration of the entire record, the undersigned finds that since July 16, 2009, the claimant has the residual functional capacity to lift or carry 10 pounds

>frequently; she can stand and/or walk (with normal breaks) for a total of 2 hours in an 8-hour workday; and she can sit (with normal breaks) for a total of 6 hours in an 8-hour workday. The claimant should avoid frequently ascending and descending stairs; she should avoid frequent pushing and pulling motions with her lower extremities (foot controls) within the aforementioned weight restrictions; and she should avoid activities requiring fine frequent manipulation with fingering with both hands. Due to mild to moderate pain and medication side effects, the claimant should avoid hazards in the workplace such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, and on the ground, unprotected areas of holes and pits. She should be restricted to a "relatively clean" work environment (low levels of pollutants and stable temperatures). The claimant can perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling; but not the climbing of ropes or scaffolds, and of ladders exceeding 6 feet and she is limited to no more than occasional overhead reaching with the left upper extremity (she is right hand dominant).

R. 808. Based on the residual functional capacity that the ALJ determined, he concluded that Plaintiff was not capable of performing her past relevant work. R. 815. The ALJ utilized the opinion of a vocational expert to determine, for the period between July 16, 2009 and May 26, 2014, that there was other work in the national economy that Plaintiff could perform and thus, Plaintiff was not disabled. R. 815.

Plaintiff argues that the ALJ erred in failing to discuss the weight assigned to the opinions of Plaintiff's treating physicians, Dr. Mason and Dr. Hudanich, who treated Plaintiff for the peripheral neuropathy, Charcot foot neuropathy, extremity swelling, and back pain[2]. Plaintiff also argues that the ALJ discounted the opinion of Dr. Lawus-Scurry for a second time, by mischaracterization of the evidence or focusing on only the evidence that would support his opinion, and ignoring the evidence supporting the physician's conclusions.

The Commissioner argues that the ALJ properly discounted Dr. Lawus-Scurry's May 2011 opinion because it was a checklist with no narrative or explanation of the limitations assessed, but merely a check-the-box form which did not point to any specific evidence. The Commissioner also contends that Plaintiff's treating and examining physicians, including Dr. Lawus-Scurry, documented

---

[2]Plaintiff mentions Dr. Scanlon and Dr. Haim, treating pulmonologists, but does not discuss their records.

-7-

only mild to moderate physical impairments, and the state agency physicians also indicated that Plaintiff remained capable of "a range of light work."

This case is the second appeal following the Court's decision on March 4, 2014 reversing and remanding the ALJ's initial decision. As the Court previously summarized, Plaintiff has a lengthy history of hypothyroidism and Type I Diabetes (R. 506) and its complications, with the problems intensifying in 2009, when, after 11 years with diabetes, she lost her healthcare coverage:

> Plaintiff has had diabetes since 1998–at the age of 31–with complications from the disease (R. 506, 514), as well as a history of back problems which eventually led to surgery. In November 2002, Plaintiff had surgery to fuse two discs in her back, L5-S1, and a laminectomy at L5 due to a lumbosacral instability at L5-S1 and foraminal stenosis at the same level; she recovered from the surgery and by January 2003 had diminished pain. R. 272, 285. However, Plaintiff's back pain increased over time to the point she required physical therapy in April 2008. R. 487-494. Plaintiff's diabetes progressed to the point she required an insulin pump (R. 507-08), and by February 2008 her "glycemic control [was] still quite suboptimal with the A1C rising to 13.3." R. 506. By April 2008, Plaintiff had to discontinue the pump after two infections and the fact that she no longer had healthcare coverage. R. 505. The endocrinologist, Dr. Pacheco, noted she also suffered from hypothyroidism due to Hashimoto's, which caused her to gain weight. R. 511-12, 518.
>
> Around the alleged onset date, in July 2009, Plaintiff began seeing Dr. Mason for pain in the arches of her feet which developed when she recently began a job at Wal-Mart working 20 hours per week involving standing; she was having great difficulty completing the four-hour days. R. 696, 715. Dr. Mason's treatment notes report very painful extensor tendinitis, on the right greater than the left with crepitus, and x-rays showed early osteoarthritic changes in the mid tarsal joint and chronic tinea pedis; Plaintiff was advised to continue with anti-inflammatory medications, but no diabetic Charcot was noted at that time. R. 715. In July 2009, Plaintiff complained of pain in her knee after hearing a sudden "pop" followed by pain and swelling. R. 528-29, 689-91. Dr. Hudanich noted mild soft tissue in the right knee with mild medial patella tenderness and concluded that Plaintiff had mild arthritic changes in the right knee, and prescribed Ibuprofen to treat the condition. R. 529, 690.
>
> In September 2009, Plaintiff was seen again by Dr. Mason for lower extremity pain and indicated that she had to stop working because of this pain. R. 713. Dr. Mason noted that Plaintiff had nonpitting bilateral edema and "significant polysensory neuropathy" bilaterally. R. 713. Over the following twelve months between fall of 2009 and 2010, Dr. Mason opined that the claimant was suffering from "severe peripheral sensory neuropathy," Charcot in her right foot, and "quiescent Charcot on the left." R. 712 (October 13, 2009); R. 768 (June 2010). Diabetic Charcot foot arthropathy is one of the most serious foot problems that diabetics face, and it is a result of nerve damage or neuropathy that leads to a loss of sensation in the feet;

> diabetes also damages blood vessels, which decreases the blood flow to the feet and poor circulation weakens bone, and can cause disintegration of the bones and joints in the foot and ankle; the combination of bone disintegration and trauma can warp and deform the shape of the foot. *See* American Academy of Orthopaedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=A00655 (visited on February 27, 2014). It is a "potentially limb-threatening disorder that is being recognized with increasing frequency in persons with longstanding diabetes and concomitant peripheral sensory neuropathy." Frykberg & Rogers, "The Diabetic Charcot Foot: A Primer on Conservative and Surgical Management," JOURNAL OF DIABETIC FOOT COMPLICATIONS (available online); *see also* "The Charcot Foot in Diabetes," NATIONAL INSTITUTES OF HEALTH LIBRARY website, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3161273/. Plaintiff testified at the hearing on May 25, 2011, that she has severe arthritis in her feet and legs such that they swell up if she stands too long; she had one disc replaced and two more degenerative discs; when she tries to walk a little distance her whole left side stiffens up on her. R. 39. The pain in her back from the arthritis causes her pain which goes straight down the left side of her body down to her leg and foot. R. 40. Plaintiff also testified that she had severe peripheral sensory neuropathy, or nerve damage, in her feet, legs, arms, and hands; she was losing feeling in her hands due to the peripheral neuropathy. R. 40, 46. Plaintiff has also had issues with swelling in her feet, legs, hands, and whole body at times; arthritis in her right hand also caused swelling at times. R. 43, 45. Plaintiff further testified that her diabetes was not controlled, but went from one extreme to another; *she failed to take the medication because she could not always afford it.* R. 41. She would opt not to take her insulin at night, but only take it in the morning; *she would not be able to take the dose at night because she did not have enough.* R. 41.

R. 916-18 (emphasis added).

In the original appeal Plaintiff argued that she suffered from peripheral neuropathy as a complication of her diabetes, and that the ALJ erred by failing to specifically find that she had such a condition and account for it in the RFC. She pointed out medical records which repeatedly noted she was suffering from neuropathy in her feet and swelling in her extremities (R. 712-13, 786, 768), and argued that the ALJ failed to discuss any of the relevant treatment notes regarding peripheral neuropathy or specifically a diabetic neuropathic condition in her feet, Charcot foot, in violation of the Eleventh Circuit case law. The Court reversed and remanded Plaintiff's original appeal for the ALJ to fully consider Plaintiff's peripheral neuropathy and the opinion of Plaintiff's treating

physician, Dr. Lawus-Scurry[3], about Plaintiff's functional limitations with her conditions. R. 909-24.

In the Court's previous Order remanding the case, the ALJ was specifically directed to address –as the reason for her non-compliance–Plaintiff's inability to afford her medications, including an adequate amount of insulin to treat her diabetes, which contributed to her diabetes complications and resulting functional limitations. The ALJ had described Plaintiff's longitudinal diabetic condition as follows:

> Since her initial diagnosis [in 1998], her blood sugar levels remain high and uncontrolled. *The claimant testified that she suffers from various ancillary medical problems including diabetic neuropathy with symptoms of blurred vision, numbness in her upper and lower extremities in conjunction with swelling and pain.* These symptoms interfere with her ability to walk, and stand for prolonged periods. Additional factors affecting her lower extremities include arthritis in her feet. These conditions combined cause swelling and numbness in her feet and complicate her ability to walk and stand.

R. 919 (emphasis added) (citing R. 20). In his first decision, the ALJ had attributed Plaintiff's "high and uncontrolled blood sugar levels" to her "noncompliance" with the treating physician's prescriptions to take her diabetes medications, without the ALJ addressing Plaintiff's inability to afford her medications, as the regulations require. R. 919-20.

As the Court previously pointed out, the regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)). In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed

---

[3]On May 24, 2011, Dr. Lawus-Scurry opined that Plaintiff could sit for one hour in an eight-hour workday; stand for one hour in an eight-hour workday; occasionally lift up to five pounds; could not use her right or left hand for fine manipulation; could not use her legs/feet for repetitive work; and would require complete freedom to rest throughout the day; and these limitations had been present since July of 2009. R. 799-800.

treatment, the claimant's ability to work would have been restored; this finding must be supported by substantial evidence. *Dawkins,* 848 F.2d at 1213 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)). "The burden of producing evidence concerning unjustified non-compliance is on the [Commissioner]." *Id.*

The Eleventh Circuit held in *Dawkins*, that, while a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law. *Id.,* at 848 F.2d at 1213-14 (holding plaintiff's explanation that she was non-compliant with treatment for her disabling condition because of poverty, or inability to afford the surgery her doctor recommended, rendered her disabled). *See also* R. 921 (prior decision). In remanding the case during the original appeal, the Court found that the ALJ's original decision was not based on substantial evidence in that "Plaintiff repeatedly raised her inability to afford treatment and medications and pointed this out at the hearing, but the ALJ failed to address it in his decision." R. 21.

Now, in this second appeal, the ALJ "reaffirmed" his earlier decision and findings, R. 805, finding for the second time that Plaintiff could perform sedentary work, with slightly more restrictive non-exertional limitations. However, the ALJ failed to address, as the Court had directed, "Plaintiff's inability to afford her medications as a reason for her noncompliance, despite clear Eleventh Circuit case law requiring him to address the issue." R. 920. Instead, the ALJ opted to omit any discussion of "noncompliance" from his second decision, even though that was the basis for the original decision he "reaffirmed."

As the Court found in reviewing the ALJ's original decision, he had "misstat[ed] and mischaracteriz[ed] some of the evidence" including the treatment records[4], which certainly portrayed

---

[4] As previously pointed out, the Court could not locate in the Administrative Record certain medical records (dated January 1, 2010 from Dr. Scurry) the ALJ had relied on in support of his finding of "noncompliance"–further undercutting his "noncompliance" finding. R. 920 (citing R. 21 (to Exhibit 31F)).

-11-

Plaintiff in an extremely negative light in terms of noncompliance." R. 920 (citing R. 21). The Court noted:

> In actuality, the record from October 22 [not 23], 2010 discusses Plaintiff's accidental over medicating with 90 units of Levmir instead of 30, which may have caused her to have a severe headache and elevated blood pressure the following day from hypoglycemia, according to Dr. Lawus-Scurry. R. 779. While it is true that Plaintiff admitted to not taking her insulin dose at night and not taking her cholesterol medicine, *she stated to the doctor (and at the hearing with the ALJ) that she did not take all of her medication because she could not afford it.* R. 547.

R. 920 (emphasis added). Unfortunately, the ALJ made the same error in his second decision, again failing to address Plaintiff's inability to afford medications during the 2009-2012 time period–before she had qualified for Medicaid[5]– as the reason for her noncompliance. At the second hearing, Plaintiff testified that she went on Medicaid in 2012, she believed, and even though she could afford the medications, her diabetes was still out of control. R. 833. Other records indicated her reports that she had lost her insurance three years before and for that reason, had not followed up with the specialist. R. 1088. As such, the ALJ's second decision, which he characterized as "reaffirming" the finding of "not disabled" from his first decision (except to the extent he found her disabled at the time her age category changed in May 2014)–also was not based on substantial evidence.

Additionally, even after Plaintiff had Medicaid coverage, her diabetes and its complications did not improve. The ALJ found that "[d]espite her significant medical history, findings on physical examination, imaging reports, and electrodiagnostic studies, do not show a degree of ongoing abnormality that would preclude the claimant from performing work within the parameters of the above-assessed residual functional capacity, from July 16, 2009 through the established disability onset date of May 26, 2014." R. 809. The ALJ erred in not adequately addressing the updated medical records Plaintiff provided of her continued peripheral neuropathy issues in 2012 and 2013[6],

---

[5]Plaintiff testified that she believed that she had been approved for Medicaid in 2012. R. 833.

[6]These records describe her condition from the period after the first hearing on May 25, 2011. R. 33.

even after she was covered by Medicaid and was receiving adequate medical coverage and medications.

Plaintiff testified at the second hearing on November 19, 2014, that she still had uncontrolled diabetes, even though she had gained access to the proper amount of medication through Medicaid, and was taking it in oral and pill form. R. 834-35. The uncontrolled diabetes affected her sight, requiring her to wear glasses, which had been happening for four years, or since 2010, after she lost her health insurance in 2009. R. 835. Her blood sugars would run as high as 745 and as low as 42. R. 838. "It can go for awhile with it staying at a normal level," then "out of the blue, it can go out one direction or the other." R. 838. Plaintiff testified that she had neuropathy in her feet, which caused a stiffness in them, found it hard to stand on them because "they swell up," and she sometimes "could not even feel her toes." R. 845. She testified it happened "on an almost daily basis." R. 845. She was using a cane to assist with walking at the time of the original hearing in 2011. R. 845. She also had swelling in her lower legs and would elevate them to alleviate the swelling for four hours per day. R. 845-46. She has had one disc replaced in her back, and two are degenerating; when she tries to walk, her lower back gets very painful and her hip and left leg goes numb, radiates through her shoulder and down her left arm. R. 846. Plaintiff was also still having significant kidney issues with stage 3 kidney disease (R. 776, 796-97[7]), and she suffered from chronic obstructive pulmonary disease, although she had never been a smoker. R. 752, 848.

In medical records submitted in conjunction with the second appeal, dated between 2009 and 2014, Plaintiff repeatedly complained of and was assessed with lower extremity swelling, foot pain, tenderness in her feet, and back pain with tenderness. R. 712-13, 766-69, 778, 786, 791, 1020, 1028-33, 1035-42, 1076-79. She had limitations in mobility, used a cane for assistance, and had used an electric wheelchair for the prior three to four years; one had been prescribed by Dr. Valey. R. 839,

---

[7]The nephrologist, Dr. Rodriguez, opined that Plaintiff would have further issues with uncontrolled diabetes and hypertension which would ultimately lead to underlying kidney failure. R. 797.

-13-

842 (testimony), 1029 (uses a cane). Although the March 14, 2013 x-ray of her right foot was negative (R. 1037), a January 31, 2013 MRI found a subchondral cyst formation and marked reactive edemal-like signal tarsometatarsal articulations; most severe second tarsometatarsal articulation, and the findings may be secondary to osteoarthritis, which correlated clinically with the possibility of early neuropathic arthropathy; with soft tissue edema dorsally. R. 1042. The assessment was possible stress fracture based on cyst formation, and she was diagnosed with compression arthralgia of the ankle and foot, with mild to moderate swelling in both lower extremities. R. 1031-33, 1040-42. On April 25, 2013, Plaintiff was diagnosed with a closed fracture of the fifth metatarsal. R. 1040. Plaintiff was diagnosed by Dr. Hudanich, her treating orthopedist, with localized primary osteoarthritis of the foot in March 2013. R. 1035. In mid to late 2013, Plaintiff was still experiencing swelling in her lower extremities (R. 1031-33, 1072-79), although it was not present at every single appointment.

Plaintiff had worsening back problems borne out by the records of Dr. Hudanich, who noted that in 2013 and 2014, Plaintiff had repeated tenderness in the right paraspinal muscles and right sciatic notch; tight hamstring with knee extension; and a positive straight leg raise test; lower back pain and left paraspinal and right paraspinal muscle spasms; "stabbing" pain increasing with prolonged sitting and standing. R. 1020-26, 1036. As late as January 2014 when Plaintiff was examined by Dr. Hudanich, he noted that a December 2013 CT scan of the lumbar spine showed "significant degradation related to patient body habitus; L5/S1 decompression with instrumentation with solid fusion without gross stenosis; L4/5 facet arthrosis, grade 1 anterolisthesis and disc bulge with probable at least mild lateral recess on foraminal stenosis." R. 1022.

The ALJ's decision is not based on substantial evidence because he failed to address whether Plaintiff's noncompliance with medication was based on her inability to afford the medications, he

failed to consider the combination of her impairments – Type I diabetes and peripheral neuropathy, Charcot foot, lower extremity swelling, back pain, stage 3 kidney disease, COPD, and hypertension. The ALJ also erred in relying on the RFC opinions of the state agency reviewing physicians which were completed in March and August 2010 (*see* R. 813), and obviously did not consider any of the records submitted after the date of their opinions, including the records from Dr. Hudanich from 2013 which found a stress fracture and arthritis in Plaintiff's foot, and a CT scan of her lumbar spine which showed "significant degradation" and a disc bulge.

For the reasons explained above, the ALJ's RFC's determination was not based on substantial evidence. In addition, the ALJ's hypothetical to the VE, which was based on this RFC was also not based on substantial evidence.

To the extent the ALJ assessed Plaintiff's credibility, his assessment was cursory, coming at the tail end of the RFC assessment:

> It is reasonable to conclude that the claimant should have some pain and/or limitations as a result of her physical impairments. However, considering the medical treatment records, the findings and opinions of physicians and medical consultants, the claimant retains the ability to perform work activities consistent with the residual functional capacity determined in this decision, prior to May 26, 2014.

R. 814.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings[8] show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

---

[8] As the Court previously noted, Plaintiff has not seen a neurologist or had specific testing for her neuropathy complaints.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ's credibility determination, which was based on his inaccurate interpretation of the records, also was not based on substantial evidence.

Accordingly, the ALJ's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July , 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record